# MARYLAND REPORTS.

## OCTOBER TERM, A. D. 1872.

ISAAC C. W. POWELL and JOSEPH H. HARRISON, Trustees, *vs.* JOHN L. HOPKINS and others.

*Mortgagee will not be Injoined from selling under a power in the Mortgage on the prayer of Trustee claiming under Deed of Trust subsequent to mortgage—Sale for Cash by Mortgagee under a power not specifying Terms of sale, not necessarily inequitable—How objection to such Sale to be made—Usury in a Mortgage—Construction of Sec. 15, Art. 64, of the Code, entitled "Mortgages."*

S. deeded all of his property real and personal to P. and H. in trust, to sell it and pay his (S's) creditors according to their priorities. J. H., one of these creditors, held a mortgage on a part of the realty. In the mortgage there was a power granted to the mortgagee to sell on default, but the power did not specify whether the sale was to be for cash or on credit. P. and H., the trustees, advertised the property mortgaged to J. H. to be sold in accordance with the deed of trust. J. H. also advertised it to be sold on the same day *for cash,* under the power in the mortgage. Thereupon P. and H. filed a bill in equity, praying an injunction to prevent J. H. proceeding to sell. The bill alleged that the two sales would throw a cloud on the title to the property, that a sale for cash was not authorized by the power in the mortgage, that a sale on such terms was harsh and inequitable, that in consequence of this cloud and the terms of sale the property would fail to bring its value at the sale, and thus other creditors would suffer loss; that the interest and a part of the principal of the mortgage debt had been paid; and that the interest charged on the mortgage debt was usurious. HELD:

1st. That the injunction should not be granted on either of these grounds.

1      v. 38.

2nd. That whether or no a sale for cash is inequitable depends on the circumstances of the case; but a party must object to the sale on this ground by filing exceptions to the ratification of the sale, and not by bill for injunction.

3rd. The exaction of usurious interest does not invalidate the mortgage or affect the power to sell given in the mortgage; and a party seeking to injoin a sale under the power must pay, or bring into Court to be paid, the principal and legal interest, before he can claim the intervention of a Court of Equity.

4th. That the part payment of the principal of the debt, if admitted, or proved satisfactorily, would not entitle the trustees to an injunction to stay the sale entirely, but only *"pro tanto."*

APPEAL from the Circuit Court for Talbot County, in Equity.

The facts are given in the opinion of the Court.

The cause was argued before BARTOL, C. J., BRENT, BOWIE and ALVEY, J.

*Alexander Randall,* for the appellants.

This case is one where a party considerably involved and desiring to apply his property honestly towards the payment of *all* his debts, conveys *all* that property to trustees, to sell it upon beneficial terms, and apply the proceeds to their payment according to just priorities.

Such conveyances are encouraged and favored by the Courts; and they have said repeatedly that the only charge of *unfairness* that could be ascribed to such transactions, is upon the part of the creditor who insists upon securing his own claim, without considering the interests of other creditors who may suffer from his anxiety to collect his money at whatever cost to the estate. *State vs. Bank of Md.,* 6 G. & J., 217.

The bill filed by the trustees, was similar to that filed in the estate of Thomas F. Bowie, which was referred to in several cases in the Court of Appeals, and among others, in the case of *Tuck vs. Calvert,* 33 Md., 219. The

injunction in that cause was granted by the Circuit Court for Prince George's County, to restrain sales by the sheriff under divers executions, upon the ground that such sales would prove disastrous to the creditors generally, and Trustees were appointed, who made sale of the property; and the propriety of this course was recognized by the Court of Appeals in several cases. *Anderson vs. Tuck,* 33 *Md.,* 225 ; *Boyd & Hance vs. Harris,* 1 *Md. Ch. Dec.,* 466.

The grounds upon which the injunction was claimed, were these :

1st. That Hopkins, in the absence of express authority in the mortgage, had prescribed *cash* as the terms of sale, and this, at a time of great financial depression, which would reduce the price of the land, and sacrifice the in. terests of Skinner and the other creditors.

There can be no more right in Hopkins to interpolate into the mortgage the *terms of sale,* than to supply an omission of *the time of payment,* and if the latter omission appeared, it would be necessary to call upon the Court to supply it, and the Court would require the payment in a *reasonable time. Farrell vs. Bean,* 10 *Md.,* 233 ; *White & Elder vs Malcolm,* 15 *Md.,* 530.

Surely no Court would consider a *cash* sale as a sale *on reasonable terms.* And since it would be necessary to resort to a Court of Equity to prescribe the reasonable terms of sale in consequence of the omission, this Court, when decreeing according to *sec.* 132, *of Art.* 16, that the sale shall take place "on such terms and conditions as the Court may determine;" would unquestionably declare that the sale should be partly on credit.

The public Local Law for *Baltimore City,* sec. 782, provides for the sale under this class of mortgages, "on such terms of sale as *to the Court shall seem proper.*" But sec. 5, of Art. 64, as to the *counties* of the State, requires the sale to be made *upon the* terms *expressed in the mortgage.*

There is only one omission which *the party* is authorized to supply, or rather, which the law supplies for him, namely, where the *time* of the *notice* is omitted, and *in that event,* the law fixes it at twenty days. Art. 64, sec. 7.

2nd. It is clear that the mortgage loan was made at eight per cent. The charge in the bill is explicitly sustained by Skinner, and fully admitted by Hopkins, who endeavors to excuse it by the most extraordinary statement that he received the $100 extra *in lieu of taxes* on the mortgage debt and *insurance, in consequence of Skinner's agreement* to pay that sum *after* it was found the two clauses *had been erased from the mortgage.* But this is disproved.

It is undoubtedly true that Hopkins received more than the legal interest, and that the pretences relied upon to escape from the charge of illegality are unfounded.

The reservation of six per cent. interest *in advance* is usurious, except for *Banks,* who are authorized to receive *discounts* in *advance.* 1 *Code, Art.* 12, *sec.* 15 ; *Act of Congress,* 1864, *ch.* 106, *sec.* 30.

All overpayments beyond legal interest, whether on the pretext of bonus, or otherwise, are usurious, and can be recovered back in an action at law. *Scott vs. Leary,* 34 *Md.,* 389. And therefore Hopkins will be held to have received the excess for the use of Skinner, and it will be credited on the *principal. Banks vs. McClellan,* 24 *Md.,* 82–3.

3d. The respondent also denies the right of the complainants to file this bill for an injunction, upon the ground that they have *no such interest* in the mortgaged premises as entitles them " to obtain an injunction *to stay the sale,"* as required by sec. 15 of Art. 64.

Admitting that the application here was for an injunction to *stay* the sale, and that the only power in Chancery Courts now to interfere by injunction exists in cases arising under Art. 64, (both of which points are denied,) the

trustees have the authority to *stay* the sale by injunction, under sec. 15.  The party having the right, under that section, to obtain the injunction referred to, must either be "a party to the deed," or one who "shall claim under such party a *right to interest* in such mortgaged premises," accruing after the recording of the mortgage, &c.—that is, "a right *or* interest."    1826, *chap.* 192, *sec.* 8; *Salmon, trustee, vs. Pierson,* 8 *Md.*, 299 ; *Teackle, trustee, vs. Crosby & Beavan,* 14 *Md.*, 23.

There can be no doubt that *all* the title remaining in Skinner and wife, after the mortgage to Hopkins, was conveyed to Powell & Harrison.   The conveyance is as ample a transfer of whatever interest was then in the grantors, as it was *possible* to make, and if Hopkins and his wife possessed any title or interest whatever in the property conveyed, before they signed the trust deed, all that interest thenceforth vested in the complainants.

If the trustees would have no right to obtain an injunction, if the debt had been wholly paid, no one could obtain it, if the mortgagor had died, or declined to interfere.   And thus the creditors of the mortgagor might be totally deprived of the right to stay the sale, because of fraud, or payment in part or in whole

The title of the trustees is no naked, dry trust, without an interest.   They are both creditors, and they represent all of the other creditors.   As *assignees* of the mortgagor, they can go into Equity for relief.   *Banks vs. McClellan,* 24 *Md.,* 81 ; *Hill on Trustees,* (543) ; *Randall vs. Swann,* 10 *G. & J.,* 314.

*Ratcliffe vs. Sangston,* 18 *Md.,* 390, was decided upon an entirely different point, and has no application here. Section 15 of Art. 64, has no such important restraining effect upon the *general equity jurisdiction* of the Courts in Maryland, as is contended for ; and this jurisdiction is only narrowed in the particulars and cases specified in the section.

That the trustees have the power and interest to interfere is clear, upon general principles, as well as upon the words of the Act. *Lucas vs. McBlair*, 12 *G. & J.*, 1; *Hill on Trustees*, (541,) *and seq.* See (548.)

*Philip F. Thomas*, for the appellees.

The injunction was improvidently granted and properly dissolved.

1st. Because the appellants, as trustees, took no such interest in the mortgaged premises as entitled them to a writ of injunction restraining the appellee, Hopkins, from making sale of that part of the real estate of Skinner, which was mortgaged to him for the payment of his mortgage debt, the same being due and unpaid.

An assignee for the benefit of creditors, is not a purchaser for a valuable consideration, and acquires, under and by virtue of the deed to him, a mere naked trust uncoupled with an interest, and wholly insufficient to authorize the grant of an injunction to stay a sale of mortgaged premises *Code of Public General Laws, Art.* 64, *sec.* 15; *Gayle & Wife vs. Fattle*, 14 *Md.*, 69; *Ratcliffe vs. Sangston*, 18 *Md.*, 391.

2nd. Because the mortgagee had a right to sell the mortgaged premises for cash, as no other terms were prescribed in the mortgage deed. The covenant in a deed of mortgage, authorizing a sale of the mortgaged property, in case of default in payment of the mortgage debt, is equivalent to a decree. Under a decree of foreclosure, the sale is required to be made for cash, unless the complainant consents to a sale on credit.

In this case, the covenant authorizing a sale by the mortgagee, required any surplus of purchase money after payment of the mortgage debt, and interest and costs, to be paid over to the mortgagor, and hence, it was necessary to sell for cash. *Code, Art.* 64, *secs.* 5, 6, 7, 8; *and Art.* 16, *sec.* 125.

3rd. Because the advertisement of a cash sale, and the failure to give to the mortgagor the notice required to be given to him before a sale of the property mortgaged, if that were the fact, were not sufficient to authorize the grant of an injunction. If the sale, for any cause, had been irregular or unlawful, the mortgagor had full and ample remedy for filing objections to its ratification. *Gayle vs. Fattle*, 14 *Md.*, 69 ; *White and Elder vs. Malcolm*, 15 *Md.*, 529 ; *Berry vs. Skinner*, 30 *Md.*, 572.

BOWIE, J., delivered the opinion of the Court.

An injunction having been granted on a bill filed by the appellants, against the appellees, in the Circuit Court for Talbot County, in Equity ; at a hearing, upon motion to dissolve, after answer filed, upon bill, answer and depositions taken under a commission, the injunction was dissolved ; from which decree this appeal is taken.

The appellants, claiming as trustees, charge that being authorized and appointed under a deed, from Gustavus A. Skinner and wife, dated the 22nd of January, 1872, conveying all Skinner's estate, real and personal to the grantees, in trust to sell the same, at public or private sale, upon such terms and notice as to them should seem best, and apply the proceeds after payment of costs, charges, commissions and expenses, in payment of the several creditors of said Skinner, according to their preferences and priorities, &c., after accepting the trust, and giving bond as required by law, they proceeded to advertise the property conveyed to them, in execution of their trust, for sale on the 12th of March, 1872.

That some of the creditors of Gustavus A. Skinner, claim under mortgages executed by him on portions of the realty, and others under judgments, rendered at different times, and they apprehend contests may arise as to their several priorities, which can only be properly adjusted in the Circuit Court.

That one of said creditors, the appellee Hopkins, claiming under a mortgage from said Skinner for the sum of $5,000, bearing date the 7th of November, 1866, upon a part of said realty called "Asbury," containing 317 acres, with a view of preventing the appellants from performing their trust, and embarrassing them in the execution of their duty, or with the design of procuring the sale of said land upon terms, that will produce an inadequate price, and that he may buy the same at less than its value, has advertised the said land for sale, for cash, under an alleged power contained in his mortgage, and insists he will sell the same, on the 12th of March, 1872, the day fixed by the appellants for their sale—that they verily believe that the said land, which is the most valuable part of the estate, will be sacrificed, because of the doubt thrown upon the title by the conflicting advertisements, and unreasonableness of the terms requiring cash for so large an amount, and the creditors of the said Skinner, will be defrauded of the chances of payment of their claims.

They charge that Hopkins, has no right to sell under his mortgage, since the conveyance in trust to the appellants for the benefit of all his creditors, and the Court will not allow any one of several creditors, to carve and cut the estate to their own exclusive advantage, and the injury of the creditors generally.

The appellants further charge, that a sufficient amount may be realized from the sales to be made by them, to discharge the claim of the appellee Hopkins; that he has no right to prescribe *cash* as the terms of sale under his mortgage, as it is not so expressed therein, and he had not given due notice, etc., and that all the interest due him had been paid and part of the principal, which he has applied toward the discharge of bonus and interest on said mortgage, higher than the rate allowed by law, etc.

The answer of Hopkins admits the execution of the deed of trust to the appellants, but denies that it conveys to them all the property and estate and effects of said Skinner, at the time of his insolvency, and insists the same is void.

He admits that some of the creditors of Skinner claim under mortgages, but denies that any of the judgment creditors are prior to the mortgage to himself, or to the deed of trust to the appellants, and avers that there are but three mortgage creditors, to wit: Margaret A. Arringdale, Joseph H. Harrison, and the respondent, between whom no contests, or difficulties are likely, or can possibly arise requiring the intervention of the Court for their adjustment.

He denies all design or purpose to defeat or embarrass the appellants in the execution of their trust, or to sacrifice the property, but avers he offered to make arrangements with responsible persons to effect a sale upon most advantageous terms, and the property would have been sold for its full value, and a larger price than it is likely to command.

He insists his right to sell, is not affected by the deed of trust, but that he has the superior and prior right to sell.

He denies that all the legal interest has been paid; or that any part of the payment of the principal, has been appropriated to other purposes.

It appears from this partial abstract of the bill and answer, that although one of the grounds relied on *by the bill*, was the cloud likely to be thrown upon the title of part of the property conveyed to the appellants, by the proposed sale of the appellee Hopkins, the main reasons for their prayer for the injunction, are the absence of any express power in the terms of sale, given by the mortgage to sell for *cash*, and the allegation that such terms were unreasonable, and inequitable, and to the prejudice of

other creditors, and want of due notice of sale as required by the mortgage.

The learned Judge who granted the injunction, relied mainly on the hard and inequitable terms of sale prescribed by the mortgagee, there being no power conferred in express terms to sell the whole mortgage premises for cash, and the averment of want of notice, whilst the Court who dissolved it, held that where no terms of sale are expressed, the mortgagee may under the power, proceed to sell upon reasonable terms, and should he impose terms, that were inequitable and unreasonable, the mortgagee, had ample remedy by making objections to the ratification of the sale, and refer to *Gayle vs. Fattle,* 14 *Md.,* 69 ; *White & Elder vs. Malcolm,* 15 *Md.,* 529 ; *Berry vs. Skinner,* 30 *Md.,* 572.

The appellants in their argument in this Court, insist their right to an injunction is established by the case of *Tuck vs. Calvert,* 33 *Md.,* 219.

The subject of controversy in that case, was the right of certain claimants to the proceeds of land sold by trustees, arising under exceptions to the auditor's report. The right to the injunction issued in the original proceedings in the Circuit Court of Prince George's County was not involved. An injunction had been obtained on bill filed by junior judgment creditors against the sheriff, who was proceeding under executions issued by senior judgment creditors.

The defendants answered the bill, and assented to a sale by trustee. This Court in that case passed no opinion on the question now raised.

In the case of *Gayle vs. Fattle,* the complainant expressly charged, that the execution of the power of sale, pending the suit of one claiming by paramount title, was calculated to cloud the title.

This Court, disposed of the allegation very summarily, declaring it insufficient to arrest the power of sale given

the vendor, by the vendee, in a mortgage to secure the purchase money; and referring to the other grounds, that the proceedings of the mortgagee, were not in conformity with the Act of 1826, ch. 192, (an Act relating to mortgages in the City and County of Baltimore,) they said: "if the sale be made without a compliance with the requisitions of the Act of 1826, ch. 192, when it shall have been reported, the appellee will then have an opportunity to point out the departure, and to claim whatever advantage it will give him," the injunction was accordingly dissolved.

If the claim by title paramount, would not justify the intervention of a Court of Equity, by injunction, because of the liability to collusion between the mortgagor and claimant; the claim of trustees, by deed subsequent to the mortgage, would justly be subject to the same objection, since nothing is easier or more tempting to an embarrassed debtor than the execution of a deed of trust, for the benefit of creditors generally, with discretionary powers in the trustees, which may be postponed indefinitely.

The policy of the law is to prevent all unusual delay, in the execution of the powers expressed or implied in the mortgage, for which reason, Courts of Equity are prohibited from interfering by injunction, except in particular cases. *Art.* 64, *Code of Pub. Gen. L., sec.* 15.

The terms of a deed are generally construed most favorably for the grantee, and most strongly against the grantor.

The mortgage to Hopkins empowers him, in case of any default, to sell all the property thereby mortgaged, or so much as may be necessary, and to grant and convey the same to the purchaser or purchasers, his, her or their heirs, or assigns, "which sale shall be made in the following manner:" The mode of sale is prescribed, but the terms are omitted; it would be a violent presump-

tion, that such a power was nugatory, because, "cash" or "credit," were not prescribed, *"omne majus continet in se minus;"* if the omission does not leave the power of the mortgagee unlimited in that respect, it certainly invests him with power to sell on reasonable terms, which may be cash or credit, according to the circumstances, and according to the case before cited, be subject to the action of the Court, on the question of ratifying the sale.

. The language of the mortgage, giving the power of sale in the present case, is nearly the same as that used in the case of *Berry vs. Skinner*, 30 *Md.*, 572.

No question was raised in that case, as to the authority to sell for cash, but this Court, recognizing the power "as appendant, or annexed to the estate, coupled with an interest and irrevocable, a part of the mortgage security, vested in the mortgagee, or any person, who by assignment or otherwise, becomes entitled to the money to be secured, decided it could not be affected by the mortgagor subsequently becoming *non compos*, and the institution of proceedings in lunacy, and the application of the committee for an order to sell the mortgaged premises for the benefit of creditors generally, so as to suspend the execution of the power by the mortgagee."

The language of the Court is, "he, the mortgagee, was constituted a trustee by the mortgage itself, to sell the mortgaged property, on default of payment, and the Court has no power to deprive him of the summary means of realizing his debt, that formed a part of the security, upon which he advanced his money." *Ibid.* 574.

An irrevocable power, cannot be annulled by a subsequent conventional trust, created by the mortgagor, without the privity or consent of the prior mortgagee.

In the words of this Court, in the case last cited, "In the absence of irregularity, fraud, or unfairness in executing the power, the Court has no alternative, however

Powell, *et al.* *vs.* Hopkins, *et al.*

harsh and severe the proceeding may appear to be, but to ratify the sale."

The allegation in the bill, of want of notice to the mortgagor, was abandoned by the appellants' counsel in argument before this Court, and is negatived by the answer and evidence.

The other points relied on by the appellants in support of the injunction are, the payment of usurious interest, and the application of part of the money paid by the mortgagor, which should have been applied to the extinguishment of the principal, "*pro tanto,*" to the payment of taxes and bonus. The exaction of usurious, or illegal interest, (if proved by the evidence,) does not invalidate the mortgage, or affect the power to sell. The Complainant must pay, or bring into Court to be paid, the principal and legal interest, before he can claim the intervention of a Court of Equity, by injunction. *Gwynn vs. Lee,* 9 *Gill,* 137 ; *Baugher vs. Nelson,* 9 *Gill,* 299.

The Court of Equity, in which the sale is to be ratified, and the proceeds distributed, has full authority and jurisdiction to adjust the question of interest between the parties—so with regard to the other credits claimed ; if admitted, or satisfactorily proved, they would not entitle the appellants to an injunction to stay the sale entirely, but only "*pro tanto.*" The mortgagor however, testifies, that he overpaid him (the mortgagee,) one year, one hundred dollars, "*which he returned.*"

L. A. Skinner, the son of the mortgagor, says : " I carried a sum of money to him, (the mortgagee,) but do not recollect how much it was. Mr. Hopkins, told me there was one hundred dollars too much, and he wanted me to take it back to my father." "I told him I knew nothing about it, * * * * he had better keep it, and give it back to my father himself."

The mortgagee both in his answer and evidence taken under the commission, denies that *all* the interest, or any

part of the principal has been paid ; or that any demand has been made upon him by the mortgagor, or the appellants, to allow credits, which he has refused to allow.

The 15th section of the 64th Article, Code of Public General Laws, declares, " no injunction shall be granted to stay any sale, or any proceedings after any sale, of mortgaged premises under this Article," * * * " unless such party shall on oath allege, that the mortgage debt and all interest due thereon, has been fully paid, or that some part of such debt or interest, the amount of which *he shall state*, has been paid, and that the mortgagee, or person acting under him, refuses to give credit for such amount," etc.

This provision of the Code, is only declaratory of a general principle of Equity, and without inquiring or deciding how far it is competent for the Legislature, to limit the power of Courts of Equity, in the exercise of their jurisdiction, it is sufficient to say, the allegations of the bill in this respect, are not sustained.

Finding no error in the order appealed from, dissolving the injunction, the same will be affirmed.

*Order affirmed.*

(Decided 14th March, 1873.)